Next case this morning is 22-1004. Okay, doors closed. Counsel for Appellant, if you would make your appearance and proceed please. Good morning, Your Honors, and may it please the court. My name is Adam Goodman. I'm a standing Chapter 13 trustee for the District of Wyoming. I'm the appellant in this matter. With me today is my staff attorney Jennifer Cruz-Turner. The question before the court today is whether the standing Chapter 13 trustee retains the fee collected under 28 U.S.C. 586 E-2 if the debtor does not obtain planned confirmation. I'm asking this court to reverse the district court. Affirm the bankruptcy court's decision and answer yes, the trustee retains the statutory fee. There are no factual disputes. This is an issue on a conclusion of law. Congress established bankruptcy trustees as individuals who are not employed by the federal government and do not receive any funding from the government. With that in mind, Chapter 13 was created by Congress as a pay-as-you-go system. As one court described it, the Chapter 13 trustee's fee is a user's fee and the debtor is the user. Section 586, which is the statute, executes this congressional intent. There are not many cases on this issue and this is a matter of first impression at the circuit court. There's also two other circuit court cases pending. The Seuss's matter is pending before the Second Circuit and the Evans matter is pending before the Ninth Circuit. In both of these cases, the Chapter 13 trustee is the appellee. There was also another recent case, Harmon, that was concluded at the Ninth Circuit back also in favor of the Chapter 13 trustee. Now, 586 is the only provision that specifically addresses the standing trustee's right to the statutory fee and it speaks in absolute terms. 1326 under Title 11 coexists and it does not conflict with 586. There are those who will compare 1226 and 1194 to 1226 and look at differing language. I would say 1326 doesn't conflict, but it does say that if a plan is not confirmed, the trustee shall return any payments not previously paid. That seems to be a policy of returning things back. So, it does seem to me that that is kind of conflicting to your position here, isn't it? I don't see that as so, your honor. When I look at 1326, I believe that provision is creditor focused. A trustee is not a creditor. A standing trustee is not an administrative claimant. Under the first sentence, it speaks about the trustee retaining things proposed by the plan. Now, the trustee's fee is not a proposal. It is not a choice. When I look at 1322 and 1325, which are the permissive and mandatory provisions for Chapter 13 plan confirmation, there's no reference to the trustee's fee and there are cases that go back to the 80s and 90s where the trustee's fee cannot be modified. There are bettors who have asked for the court to adjust the fee and the courts have decided they do not have the authority. The authority rests with the United States trustee who is the overseer of the Chapter 13 trustee system. That's a different question than modification rather than payment. I mean, you do have this language in 1326 if a plan is not confirmed. The trustee shall return any payments not previously paid and not yet due and owing to the debtor. I know that it's not a direct control, but in a case with so many conflicting arguments and so many conflicting policies, I mean, this case can make your head swim because you can make cases on both sides and you both have done so very admirably. But isn't that at least a beacon for us to hang our head on? Well, as I look at it first, Judge, I would first step back to 586 and it speaks to the standing trustee shall collect percentage fee from all payments received. So, we're starting off with a concept that we're not talking about dispersing funds, but the trustee receiving those funds. Well, but collect is not necessarily self-evident. What that means, collect would mean collect and hold. And if it means collect and hold, then it could mean at a certain point if there's not confirmation, you return that money. That could be, Your Honor. However, hold is not part of the statute. And in fact, as it says not previously paid under 1326, the trustee had already previously been paid. So, as I look at 1326, I look at the under that second and third sentence of 1326A2, that it's funds not previously paid. It's already been paid to the trustee. Paid in a sense of delivered to the trustee. I mean, these terms, the problem here is they're amenable to different interpretations. I mean, a paid could mean I'm paying you until a time certain. And that time certain is confirmation, non-confirmation. And then at that point, there's some determination to be made. I mean, if you're looking at 1326586E, I take it your view is that it's unambiguous in what it's saying, correct? That is correct. Well, don't you also rely on your argument somewhere on BTD Farms, which where BTD Farms says that that provision is ambiguous? And how do you square those two? Well, Your Honor, is that BTD Farms dealt with the fee on fee issue, which is a separate issue than what's at stake before this court. I didn't understand you. You got a little bit soft there. Speak kind of into the microphone a little bit more loudly. Just repeat that last sentence. As I saw it, Your Honor, BTD Farms is a case that involved a fee on fee issue. It was a separate issue. And when one looks at the statute, you may not easily see, and as this court found, there was ambiguity in 586 in relation to looking at that issue. This issue says that the sustaining trustee shall collect the percentage fee from all payments received. And so I see that as a different issue than what BTD Farms addressed. Well, it is a different issue. The question becomes whether the statute is any more amenable to a clear, unambiguous interpretation in this instance than it was in BTD Farms. And if, you know, if that's your position, then then why don't you jettison BTD Farms entirely? You do rely upon it elsewhere in your brief, right? I certainly cite that, Your Honor. The bankruptcy court has determined that it's viewed the issue as similar based upon 1326 in the references to whether or not the fee is part of the plan, or is it not part of the plan? And let's talk about those statutory analogies. I it's not, I think you suggested that there were poor analogies, and it's not entirely clear to me why that is. I mean, they deal with the same general subject matter, and two statutes say that speak specifically to the question of whether the trustee can retain the money. This one doesn't. And to put a finer point on it, before I hear your response, there was, looking at the history, I'm talking sort of the evolution of these statutes. Congress at a certain point had occasion to do 1226A, and at that point they amended a part of 1326. Now, when they did 1226A, creating this provision that says that the trustee can retain the funds, well, they had an opportunity when they were tinkering with 1326 to do the same thing. They didn't do that. And so, I we're trying to draw inferences from the structure of the statute, from the evolution of statute, from what Congress did. Why isn't that, well, number one, why isn't just looking at the comparison of the statutes compelling? And two, what import can we derive from this statutory history that I just outlined? Your Honor, certainly Chapter 13 has been around much longer than Chapter 12 and subchapter 5. I don't know that we can necessarily draw an inference as to the should say the identical thing in another. That may not have been an issue they were looking at and I don't believe. Well, that goes, that goes exactly to my second point. My second point was, there was an occasion in when Congress did 1226A, the provision I think that we're talking about here, they also tinkered with 1326. So, they went back and revisited that same statute. So, right in front of them is trustee gets to retain the money. Right in front of them is this other provision that, at least on its face, could suggest that the trustee has to return the money. Well, Congress had plenty of opportunity to change the latter and it didn't do that. So, my second question is, why isn't that in some sense suggested that Congress didn't intend to do that? Well, Your Honor, when I first look at, I look at the applicability provisions of Title 11 and 103, H, I, and J, each in their own, basically say that you stay within the chapter you're in. You don't look at other chapters to determine how to interpret your particular chapter that you're operating under. So, it's not a mix-and-match situation. I thought that BT, I read it recently and I thought BT, BT Farms, specifically had a footnote that said you can look to Chapter 12 and constrain Chapter, you know, 13, well constrain the provision 586E there. Well, well, that's not in the same box. It's not in the same title. So, so why not? Well, Your Honor, when I look at 1226, 1326, and 1194, each of them uses separate language. They are not identical languages between any of them. And when I look at the chapters themselves, each of those three chapters have different eligibility requirements. Each of them have different plan following requirements. For example, in Chapter 13, the debtor has 14 days to file their Chapter 13 plan. They have 30 days to start making their payments monthly to the Chapter 13 trustee. Well, those are differences, but do they go, I mean, you can talk about there, obviously, there's tons of differences, but those don't matter to us. The question is, are there differences about whether trustees can retain funds when the plan or the, the objectives fail? Well, as I also look at it, Your Honor, under 1326, it uses language that the other chapters do not use. It speaks of funds not previously paid and funds not yet due and owing to creditors. Those phrases are not used in Chapter 11. They're not used in Chapter 12. Each chapter has its own language to effectuate the results that are virtually identical to them, that the standing Chapter 13 trustee is paid. Well, I found the language I was, I was, my brain was looking for, footnote three of that BTD farms, Chapter 12 is closely modeled after Chapter 13. Well, okay, well, they're closely modeled after each other. You, you, and, and, and at some level, yes, we're, there may be additional language, but the point is, as it relates to this specific transaction that we're talking about here, what we know from Chapter 12, what we know from, from Chapter 11, that provision is that Congress knows about this. They recognize this as an issue and they provide it for it expressly. Uh, and, and, and so I, it seems to me that raises the question, you know, yes, under the negative inference canon, why we can't infer that Congress knew about the issue and just decided they didn't want to fix it in Chapter 13. You know, I would submit that is appropriate to treat all chapters. Similarly, is it really appropriate? I mean, don't don't we have don't we have under Chapter 13 kind of a different situation of trustees without really reserves and they really this is kind of a Hail Mary last choice. Aren't aren't they really positioned differently? Chapter 13 trusteeships in each of our different function based upon receiving funds from the cases that they administer. The debtor makes monthly payments in each instance. The Chapter 13 trusteeship is a self-funded system. As I stated before, there are no government funds involved and those who use the system have to pay to use that system and it doesn't properly operate if all parties who use the system do not pay for it. When we look back to the word collect Judge Holmes, I look at it similar to this court collecting the filing fee or when the shopkeeper collects taxes. I'm not involved in collecting the filing fees. I don't know. I go ahead. It's the same. It's the same concept your honor that something is being collected and it and I think that is more of an absolute issue that statute does speak to shall and it speaks to shall even a 1326 and to step back a moment under 1326 be it also speaks to the standing Chapter 13 trustee and speaks of 586 again to references that you will not find in Chapter 11 or Chapter 12 when it comes to compensating the trustee. So the languages are different but they end up reaching the same result. But that just presumes a meaning of collect which is not necessarily self-evident. Let me just move on for a second. What's your view of Chevron deference in this context? Were there some discerning of ambiguity here? I think if there is ambiguity that as it is in Chevron, you look to first if it's ambiguous if it is then you look to whether the agency's construction is permissible. And when I look at the United States trustees handbook on this issue, it is consistent with one interpretation here. There's nothing arbitrary or capricious. It is not manifestly contrary to the statute. The concept is that under 586 the United States trustee is the only party that oversees the standing Chapter 13 trustee system. It is not with the court. It was it previously was with the court but it was separated in the 1980s. So the United States trustee was the party that oversees the entire operation of the standing Chapter 13 trustee. But what do you do about the fact that the handbook is not the product of notice and comment rulemaking? It doesn't have to be mandatory. It could be permissive deference to that agency. Well if it's permissive it's not Chevron in that sense. But in the same sense, your honor, since that is the agency that oversees the standing trustees, it would be appropriate to look to see how they would interpret the statute and have the trustees operate in that function. But nothing that the handbook said cleared the kinds of scrutiny that happens when agencies adopt regulations and they have public notice and public disclosure. I mean, a handbook is just something that they write up and they can change. So it has much less reason to be given deference. Don't you agree? Okay, that could be the case, your honor, but I think it is it is a solid piece of information that helps the trustees operate and properly function and causes a system that tells us what the trustees position is. But we can tell that from the argument today, and we can also tell it from their self interest. They would like to be able to retain funds. So, I mean, nothing there is surprising whatsoever. Well, the United States trustee, unless the trustee collects too much funds, which is never the goal, the standing chapter 13 trustees goal is always to keep the fee down. And that's one of the problems here is if everyone does not participate and pay in the system that they go into, and the folks who are completing their plans and getting their cases confirmed are the ones who are paying for the system for those who do not get their cases confirmed. And in this situation, we're looking at a debtor who is self-employed, who enjoyed the automatic stay for over two years, filed for plans, did not amend his income or expense schedules. The standing chapter 13 trustee has a duty to be heard at confirmation, and the bankruptcy court sustained my office's objections. The bankruptcy court found that there were significant inaccuracies, there were material miscalculations that were neither illusory nor speculative. In fact, based upon the bankruptcy court's findings, essentially over a five-year period, this debtor would have shielded over $112,000 for payments to creditors. Debtor's counsel is paying, and the debtor is seeking to disgorge the fees my office has received in this case of less than $2,600. What the debtor is seeking to do here in this case is create a financial conflict of interest for the standing trustee where confirmation becomes a carrot and forces the trustee to put aside his duties and responsibilities to allow a case to be confirmed that should not be. This is a perfect example of that situation. This case did not deserve to be confirmed the way the debtor performed here. The debtor wanted my office to ignore the debtor's finances, ignore the debtor's known inaccuracies, ignore the debtor's duties and responsibilities, cause my office to ignore and put its responsibilities aside so that the debtor can have a plan confirmed. As you pointed out, this is a case of statutory interpretation. We're not here to punish this debtor, and we'll give you some rebuttal time, but let's conclude right now. Thank you. Thank you. Thank you. I'm going to go off script just a little bit and respond to what the trustee's final argument was. And to my mind, it was an appeal as to policy. He's going down the policy path. The first seven pages of his brief are all policy. I submit that the statute trumps policy. There's no reason to go to policy. If we feel sympathy for the trustee because he works hard and it's a self-funded program, et cetera, and we should throw him a bone, that's one way of going about it. But to my mind, there's no reason to deviate from the clear mandates of 586 and 1327. I'm going to start, if I could, with my best arguments. And if I don't say these, I'm going to hate myself tomorrow. Let me just toss these out real quickly. Congress knows how to pay a trustee when it wants to, clearly. And it doesn't want to pay a trustee in a 13 for a dismissed and unconfirmed case. 1226 gives us direction. 1194 gives us direction. So does 1326 by its omission and the negative inference of 1326, not repeating what 1194 and 1226 has. It gives us direction. 1326, if a case is confirmed, the trustee is to promptly pay per the plan. When a case is not confirmed, the trustee is to return those monies to the debtor subject to 503, which is administrative expenses, and the trustee doesn't fall under 503. My second strongest argument, I think, is the code is replete with the term under the plan, under the plan, under the plan. I was here about a year and a half ago in a case called Kinney. Didn't go well for this Kinney. But ironically, it does weigh in in this case. Kinney says, and so does Piccadilly from the Supreme Court, under the plan means a confirmed plan. It doesn't mean a proposed plan. It doesn't mean a plan that we're thinking of filing. It means an order of confirmation. This is why 586 goes against the trustee's argument. 586 uses the same term under the plan. The trustee would have this panel believe that 586 stands for the proposition that as soon as you get the money, you get to keep it. It goes in your pocket. And to my mind, that's quite a stretch. Some of the cases… Why is that such a stretch? I mean, collect could just mean that. You collect the money. Collect means collect and hold. It doesn't say that. It doesn't say hold either. It says collect. It doesn't. We have to look at the context. First of all, we've got 1226 and 1194 that says return the monies except for the trustee gets to pay itself. So 1326 doesn't help. The definition of 586, in some of the cases, they run to black dictionaries, et cetera. They don't look at the context of the big picture. Collect does not mean to sever a portion from each payment and then to put it in your pocket immediately. You keep the money at the direction of the order of confirmation, and that's what under the plan means. And if we don't have an order of confirmation, then 1326 gives us direction, and it says the money goes back to the debtor subject to 503. Another point. 586 is parked within Title 28, which is entitled Judiciary and Judicial Procedure. 586 in particular is Duties and Supervision. You contrast that to Title 11, which is the Bankruptcy Code, and then we look at 1326 called Payments. Now, we're talking about where should payments go? I submit, and not at the expense and the risk of sounding glib, let's look at the section that says Payments. Let's not look at the section that says Judiciary and Judicial Procedure and Duties and Supervision. 586 does really one thing. It says the percentage of the fee that the trustee is entitled to get. That's it. It actually goes on to say under the plan, so there we have that kiddie, piccadilly result. What did we do with, you referenced an argument that's at play in this case about the comparison of Title 12 and Title 11 and what they provide and what is not provided for in 1326. One of the arguments of opposing counsel is that this is really a sort of mismatched analogy because the language is different. Now, in 1326, we speak of payments. In 1226, we speak of payments and funds. What should we take from that in terms of whether 1226 is really applicable here at all? And I think that same language is in 1194 as well. Sure. It's interesting. It raises several points. One, some of the case law suggests that the difference between the 13, the 12, and the 11 is that the 13 is fast-tracked. You file a plan within 14 days. There's a quick confirmation hearing. 11 and 12 don't have the same. They take longer to get to fruition, if at all. So I think the enticement is for the trustees in 11 and 12, it's quite possible you're not going to get paid and you're not going to get paid for quite some time, whereas the 13 is an expedited system. And therefore, yeah, so if it's expedited, then the likelihood the trustees can be compensated is greater than in an 11 and 12. This is just kind of dicta, and I think Judge Lafferty brings it up in his dissent in Harmon. Interesting, the use of the word funds, and I thought about that. Why put in the word funds? I can only guess. Chapter 12s and 11s often deal with the sale of property, the sale of the farm, the sale of real estate, the sale of something. It's quite possible that the plan payments and funds, you don't have funds so much in a chapter 13 because you're not liquidating usually. You're reorganizing. But in 11 and 12, it's quite possible that you're selling something, then money's coming in from a third party. That I would consider to be funds. So I take it from all this that your position would be even if funds had a practical import in the connection with 11 and 12, that does not change the fact that the difference that is reflected in 12 and 11 from what is in 13 is a distinction with a difference. In other words, Congress, it tells us that Congress intended to leave 13 as a vehicle where the trustee couldn't keep the money. In other words, the analogy is still a good one. Exactly, Judge Holmes. All right. And I would also submit. Well, I suppose also if 13 is a proceeding, one could conclude that the attorneys, if they don't get their fees, that may be less consequential on average than in an 11 or 12, because it's been a quick in and out. And there may not have so much of an invested fee in the 1st place. So it might be not quite so consequential. Is that a fair thought as well or not? I do think that's a fair observation, Judge. And also, I don't think we should look at legislative history unless there's ambiguity. I don't think there's ambiguity with 586 and reconciling with 1326. And I refer to Ron's decision of the Supreme Court. Let's get these statutes to reconcile one another. Let's not try to create conflict where there is no conflict. 586 works very well. 1326, 586, you collect the money. 1326, this is how you disperse it. Here's the legislative history on 586. Very telling. If a private standing trustee serves, his fee is fixed by the Attorney General per 28 U.S.C. 586, and it will be payable under proposed 11 U.S.C. 1326 A.2. It will be payable under proposed 1326 A.2. Congress knew what it was doing. This goes back to 1977 when it promulgated this. And this argument that – I thought you were just telling us that we shouldn't look at legislative history. I know, and I deviated from my own rule. I think so. Yes. All right. We can strike that. This business about, well, 1326 was promulgated at a different time than 1226 and 1194. Maybe it was an oversight by Congress. Really? Are we going to go down that path? You know, we can say a lot of things about Congress. But one I don't think attributable to Congress is it forgot to amend 1326 to give some direction. It does give direction. Could you shed some light on one what appears to be sort of a – well, it may not be a factual oddity, but it struck me as one in this case, which is that in a number of these cases that have dealt with similar issues, there seemed to be the contemplation that payments would not come to creditors until actually confirmation had taken place. In other words, that's when the decision would be made to return everything and the decision point that's at issue here, whether the trustee would keep their share or not. Well, in this case, there were some payments made to creditors prior to confirmation. Specifically, Colorado Department of Revenue. Didn't Colorado Department of Revenue get some money? And if that's so, I just wanted some light shed on how does that work? I mean, how is that appropriate here where it doesn't seem to be appropriate or it doesn't seem to have happened in some of the other cases? Judge Holmes, I'm using memory, but I think the Colorado Department of Revenue got money under a distraint order post-dismissal. I don't think it ever got paid per an order of confirmation because confirmation never occurred. Well, not per confirmation, prior to confirmation. It seemed to me that at least my recollection of reading the materials was that there had been payments made to the – they used the phrase priority tax claim. And that then the decision point came, do I return the rest of it plus my share or do I keep it? I mean, if you don't have any recollection of that at the moment, that's fine. I don't want to belabor it, but it just struck me as an odd thing. Right. I do remember the word distraint. It is not uncommon when a cap for 13 is dismissed, the government comes in, sends in a warrant, a distraint, and says we're entitled to some of that money, notwithstanding the fact that 1326 says it should go to the debtor. I don't think the government got paid prior to confirmation. You know, going back to the order of confirmation, the case law suggests that you cannot do anything without the authority of an order of confirmation. The trustee argues, well, Kenny only says when the plan ends. It doesn't say when it begins. But I say that's immaterial. We don't care when it begins. Maybe the plan payments begin 30 days from the order for relief or the conversion. It doesn't matter. We do know when it's confirmed. That's the key date. And without an order of confirmation, there's no direction until you get to 1326, which says that money goes back to the debtor subject to administrative expenses. Does the panel have any additional questions or concerns for the appellee? Once again, the only way the trustee is going to prevail is under policy. 586 doesn't help them. And as I said, the idea that Congress forgot to amend it is complete folly. Here's the big picture with Chapter 13. Clearly, Congress prefers 13. You can see that in 1328. You can see that in the means test. It pushes debtors since BAP CPA in 2005 towards 13. Congress wants these cases confirmed. A confirmation order benefits everybody, not just the debtor, but the taxing authorities, the mortgage lender, the unsecured, the secured credit. Everybody is benefited from an order of confirmation. No one is benefited from an order of dismissal. And in this case, filing four objections to confirmation based on disposable income for a guy who repairs forklifts. And I know I don't want to get mired into the particular facts in this case. But the policy is let's get these cases confirmed. It's a benefit to everybody. And the carrot is you get paid. The stick is you don't. Well, your argument confirms what I understood to be counsel's opposing perverse incentive from adopting your view, which is it allows for the carrot of getting paid to skew the system such that the trustee overlooks things that they otherwise wouldn't overlook. Right. It's possible. It's possible. It's quite possible. But why? Why deviate from the clear language of the statute and get into some. That's what we're talking about to begin with the clear language of the statute. Right. I mean, if we're going to speculate that they may get paid for something, they shouldn't get paid for. The other speculation is that they will be more highly motivated to get that plan confirmed. Which is the objective. That'd be the carrot. So, I mean, you know, we that's why I said earlier, we both hear that there's you can find something for everybody in this case. The cases are certainly split all over the place. Ironically, and I think the majority of cases are on our side, but I think the best analysis is the dissent by Judge Lafferty in the Harmon decision out of the BAP ninth circuit. He takes to task all of the minorities arguments and he addresses policy, addresses the definition of collect, etc. I also like the opinion because Judge Lafferty went to my law school. Thank you for doing so. Anything further? I have nothing else. Thank you. One minute. Thank you, Judge. I appreciate the time. This council, I believe, has proved my point in many ways, and I would just look to the court to look at Judge Romero's order denying confirmation to explain a lot of this case. Why Chapter 13 is not a quick and out solution in many situations. I would desire it to be, but it not always is. And the trustee's duty is to keep an eye on these cases. And I think what we're looking at in this case is something that do the exact opposite of the court rules against my position. We look at statutory construction. I think we need to give each word its plain meaning. 586 in this situation, I believe, is plain meaning. We need to give effect to all provisions. I believe that looking at the way that the trustee looks at this case gives meaning to 1326, gives meaning to 586. We need to avoid surpluses and stick to clear language. 586 speaks in shall terms. 1326 speaks in shall terms. We should look at them together. Look at specific over general. 586 speaks very specifically. We need to avoid conflict, avoid absurdity. Debtor's counsel has established absurdity in the things he's talked about in regards to the situation. Do not add words to the statute. I would note that this is not a majority situation as the debtor would look at it. I believe that what we're looking at is a situation in Lester, New Mexico, Toledo, Ohio, or Arkansas. Trustees across this country are receiving the fee. I have a lot more to say, but I appreciate the time you've given me, Judge. Thank you, Counsel. Case is submitted. Thank you for the fine arguments.